UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MORGAN PIANKO | Case No. 20-cv-13371 |
| Plaintiff, | Paul D. Borman |
| v. | United States District Judge |
| GENERAL R.V. CENTER, LOREN BAIDAS, CHRIS DAVIS, CHRISTOPHER MILLER, AND JOY FOWLER | Curtis Ivy, Jr. United States Magistrate Judge |
| Defendant. | |

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CHRISTOPHER MILLER'S MOTION TO DISMISS COUNT IX OF PLAINTIFF'S FIRST AMENDED COMPLAINT (ASSAULT & BATTERY) AND TO STRIKE PARAGRAPHS 60 THROUGH 62 OF PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF NO. 7)**

I.   Background

Plaintiff Morgan Pianko, a former employee of Defendant General R.V. Center, Inc, ("General") filed a Complaint in this Court on December 30, 2020 alleging Sexual Harassment Discrimination and Retaliation under Title VII of the Civil Rights Act of 1964, as amended 41 U.S.C. § 2000 et seq., and related claims, stemming from an alleged Assault and Battery by Defendant Christopher Miller, General R.V's Corporate Sales Manager, on March 3-4, 2018. (ECF No. 1.) On

1

January 11, 2021, Plaintiff filed an Amended Complaint and Jury Demand. (ECF No. 3.)

On March 9, 2021, Defendant Christopher Miller filed a Motion to Dismiss Count IX of Plaintiff's Amended Complaint (Assault & Battery) and to Strike Paragraphs 60, 61, and 62 of Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12. (ECF No. 7.) Pursuant to E.D. Mich. L.R. 7.1(f)(2), the Court concludes that it is appropriate to decide this motion without a hearing.

Defendant General owns and operates thirteen dealerships selling and servicing recreational vehicles ("RVs") throughout the United States. (Amended Complaint, ECF No. 3, ¶ 11.) Defendant Christopher Miller is General R.V.'s Corporate Sales Manager. (*Id.* ¶ 14.) Plaintiff Morgan Pianko began working for General in May 2014 as a detailer cleaning RVs in its Wixom, Michigan dealership, and in approximately January 2015, was promoted to a clerical position as a biller or office assistant. (*Id.* ¶¶ 12–13.)

On Saturday, March 3, 2018, Plaintiff was working as a "title clerk or "RV show clerk" for General at a weekend RV show in Lansing, Michigan under the supervision of Defendant Miller. (*Id.* ¶15–17.) Plaintiff alleges that on the night of March 3-4, 2018, Miller asked Plaintiff to go outside with him while he smoked a cigarette. (*Id.* ¶ 21.) Plaintiff alleges that "as they walked through the hotel lobby

to go outside, Miller said he needed to get more cigarettes from his hotel room" and Plaintiff agreed to follow him to his room. (*Id.* ¶ 22–24.) Plaintiff, wearing her winter coat, waited in the hallway outside of Miller's hotel room. (*Id.* ¶¶ 25–26.) Miller then told Plaintiff to come into his hotel room so that he could make himself a drink before going outside to smoke. (*Id.* ¶ 27.)

The First Amended Complaint continues in relevant part:

28. After Miller made his drink, he took his belt off, walked towards his luggage, and began taking off his clothes.

29. Morgan was shocked. As soon as she heard Miller take his belt off, Morgan started to leave the room.

30. Miller then said, "Chill the f*** out. I'm just changing out of my work pants."

31. Morgan turned away so as not to see Miller undressing.

32. Miller's subsequent conduct included, without limitation:

A. Miller pulling down his pants and underwear in Morgan's presence;

B. Miller exposing his t******** and p**** and asking Morgan, "Actually while we're here, will you do me a favor and touch my balls and tell me if you think they are smooth"; and

C. After Morgan refused, Miller grabbing the shaft of his p**** and while exposing his t******** and p**** to Morgan, Miller repeatedly requesting Morgan touch his t******** saying "Come on just touch 'em, just touch 'em, and tell me what you think, c'mon, I will hold my shaft so you don't see it, just touch 'em".

3

33. Morgan refused to touch Miller's t********.

34. Miller then told, "Don't worry, as much as you want to have sex with me right now, I'm not going to".

35. Morgan again was shocked and refused to have engage in a sexual relationship with Miller.

36. Miller laughed and acted like it all was a joke.

37. Miller then said, "Seriously, you don't want to have sex with me right now?"

38. Morgan told Miller again she was not consenting to, and not interested in, a sexual relationship of any kind with him.

39. Morgan was disgusted and surprised by Miller undressing in front of her, exposing himself, asking her to touch his t******* and asking her to have sex with him.

40. Morgan was disgusted and surprised by Miller outrageous requests.

41. As Morgan started to leave Miller's room, Miller grabbed and yanked Morgan by her right hand at her wrist.

42. As Miller gripped Morgan's wrist, Morgan was able to turn the door handle with her left hand and open the door into the hallway.

43. Miller would not let Morgan go.

44. As Miller yanked Morgan's wrist, Morgan held onto the door handle.

45. Miller yanked at Morgan's wrist five (5) or six (6) times while Morgan held onto the door handle with her left hand.

46. Miller yanked M Morgan's wrist so hard that Morgan's feet left the ground a few times as Morgan held onto the door handle.

4

47. As Morgan clung to the door handle, Morgan yelled four (4) times to Miller: "NO! I NEED TO LEAVE! NO! I NEED TO GO TO BED! I NEED TO GO! NO! NO I NEED TO LEAVE."

48. Fortunately, Morgan was able to hold onto the room door handle to the hallway.

49. By holding onto the room's door handle to the hallway, Morgan was able to eventually break away from Miller's grip of her wrist.

\*\*\*

60. She then reported Miller's misconduct to General and to the Eaton County Sheriff's Department.

61. After an independent investigation, the Eaton County prosecutor charged Miller with criminal assault and battery. *People v. Christopher Miller*, 39th District Court (Charlotte, Michigan), Case No. 2018-0001148.

62. On or about August 21, 2018, Miller pled "no contest" to disorderly conduct in exchange for the prosecutor dropping the criminal assault and battery charges.

\*\*\*

142. On or about February 10, 2019, when working for General as its Corporate Sales Manager, Miller saw Morgan at an RV show in Novi, Michigan.

143. Morgan was working at the RV show for another company located a significant distance from Miller and General's booth.

144. After Miller saw Morgan, Miller followed and approached Morgan at the RV show.

145. Miller was close enough to Morgan to call her "a f\*\*\*ing retard" despite an Eaton County probation order compelling Miller to stay away from Morgan, have no contact with her and ignore her.

5

> \*\*\*
>
> 154. On or about February 10, 2019, when working for General as its Corporate Sales Manager, Miller made intentional and unlawful threats to do bodily injury to Morgan.
>
> 155. Miller's threats to Morgan were made under circumstances that created in Morgan a well-founded fear of imminent peril.
>
> 156. Miller had the apparent ability to carry out the act if not prevented.

Plaintiff filed sex harassment and retaliation charges against General R.V. with the Equal Employment Opportunity Commission ("EEOC") On April 9, 2018. (*Id*. ¶ 84.) On June 4, 2020, the EEOC issued its Determination, finding: "Evidence gathered during the investigation reveals that there is reasonable cause to believe that the Charging Party's [Morgan's] sexually [sic] harassment and retaliation charges are true." (EEOC Determination, ECF No. 3-6 PageID.84) the EEOC issued its Right to Sue letter on September 25, 2020. (ECF No. 3, ¶ 87.)

Plaintiff initially filed a complaint alleging assault and battery against Defendant Miller in Oakland County Circuit Court on February 27, 2020. (ECF No 9-5, Case No. 2020-179950.) Ultimately, Plaintiff moved to voluntarily dismiss the case without prejudice on February 3, 2021 (ECF No. 9-6), and the Oakland County Circuit Court dismissed the case without prejudice on February 10, 2021. (Voluntary Dismissal Order, ECF No. 9-7).

6

## II. Standard of Review

### a. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). Sixth Circuit "precedent instructs that, for a complaint to survive such motions, it must contain 'either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.' " *Buck v. City of Highland Park, Michigan*, 733 F. App'x 248, 251 (6th Cir. 2018) quoting *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.' " *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The Sixth Circuit has reiterated that "[t]o survive a motion to dismiss, a

litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### b. Motion to Strike – Fed. R. Civ. P. 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides only that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Neal v. City of Detroit*, No. 17-13170, 2018 WL 1399252, at *1 (E.D. Mich. Mar. 19, 2018) (quoting *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy*, LLC, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015)). "A 'motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.' " *Clark v. Roccanova*, 772 F. Supp. 2d 844, 850 (E.D. Ky. 2011) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)).

### III. Analysis
#### a. Assault and Battery: March 3-4, 2018

In his Motion to Dismiss, Defendant Miller argues that Plaintiff's claim for Assault and Battery stemming from the incident in Defendant's hotel room on March 3-4, 2018, is barred the statute of limitations, MCL § 600.5805(3), which bars an action for Assault and/or Battery after two years has elapsed.

That provision, however, is subject to subsection (6), which extends the statute of limitations to recover damages sustained due to "criminal sexual conduct." Subsection (6) states:

> (6) The period of limitations is 10 years for an action to recover damages sustained because of criminal sexual conduct. For purposes of this subsection, it is not necessary that a criminal prosecution or other proceeding have been brought as a result of the conduct or, if a criminal prosecution or other proceeding was brought, that the prosecution or proceeding resulted in a conviction or adjudication.

MCL § 600.5805(6).

Plaintiff argues that Miller's alleged conduct on March 3-4 falls within the definition of "criminal sexual conduct," and consequently that the ten year statute of limitations should apply. For the reasons that follow, this Court finds that the Plaintiff has plausibly alleged that her claim for Assault and Battery involved criminal sexual conduct, and thus, the ten year statute of limitations will apply.

9

"Criminal sexual conduct" is defined by the Michigan Penal Code, MCL § 750.520b (first degree), 750.520c (second degree), 750.520d (third degree), 750.520e (fourth degree), and 750.520g (Assault with intent to commit criminal sexual conduct). Under these definitions, the actor must have engaged in "sexual contact." "Sexual contact" is defined in MCL § 750.520a:

> (q) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>     (*i*) Revenge.
>     (*ii*) To inflict humiliation.
>     (*iii*) Out of anger.

In her Response, Plaintiff specifically cites the definition of criminal sexual conduct in the fourth degree codified in MCL §750.520e(1):

> A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
> \*\*\*
> (b) Force or coercion is used to accomplish the sexual contact. Force of coercion includes, but is not limited to, any of the following circumstances:
> \*\*\*
> (v) When the actor achieves the sexual contact through concealment or by the element of surprise.

Plaintiff has plausibly alleged that Defendant Miller engaged in criminal sexual conduct because Plaintiff has alleged that Miller engaged in "sexual contact"

by grabbing his own genitals and achieved the sexual contact through force or coercion "through concealment or by the element of surprise."

First, Plaintiff has plausibly alleged that Miller engaged in "sexual contact." "Sexual contact" includes the intentional touching of the victim's *or actor's intimate parts*. MCL. § 750.520(a) (emphasis added). During the alleged assault and battery, Miller engaged in intentional touching of his p****. After Miller allegedly lured Plaintiff to his room on the premise that he needed to get cigarettes and make himself a drink, Plaintiff alleges that Miller pulled down his pants and underwear, exposed his t******** and p**** and after Plaintiff refused to touch him, Plaintiff alleges "Miller grabbing the shaft of his p**** and while exposing his t******** and p**** to Morgan, Miller repeatedly requesting Morgan touch his t******** saying 'Come on just touch 'em, just touch 'em, and tell me what you think, c'mon, I will hold my shaft so you don't see it, just touch 'em.' " (Amended Complaint, ECF No. 3 ¶ 32.) Miller's intentional touching of his own private parts "can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose." MCL § 750.520a.

Second, the allegations in the complaint are consistent with the definition criminal sexual conduct in the fourth degree codified in MCL §750.520e(1), which includes sexual contact "When the actor achieves the sexual contact through concealment *or by the element of surprise*." (emphasis added).

11

Conduct comparable to that seen in this case has been upheld by the Michigan Court of Appeals as "reasonable for the trial court to infer that defendant made 'sexual contact' by the element of surprise." *People v. Gregory*, No. 346516, 2020 WL 815780, at *3–4 (Mich. Ct. App. Feb. 18, 2020). In *People v. Gregory*, the Michigan Court of Appeals noted that:

> The trial court found that defendant induced the victim to accompany him to an isolated area, away from the sight of coworkers, under the pretext of telling the victim that her board measurements were inaccurate. When defendant and the victim were in the secluded area, defendant used the opportunity to slap the victim's buttocks.

*Id*.

Here, Plaintiff alleges that "[i]n the hours leading up to this incident, Morgan spoke with Miller about scheduling an in office conversation in regard to a promotion from Morgan's hourly clerical position into a more lucrative sales position." (Amended Complaint, ECF No. 3, ¶ 20.) Following this, Defendant is alleged to have told the Plaintiff to come to his hotel room under the pretext that he needed to get cigarettes and make himself a drink before they went outside so Defendant could smoke a cigarette. Plaintiff waited outside the room, wearing her winter coat (*Id*. ¶¶25–26.) Defendant asked her to come inside so that he could make himself a drink. (*Id*. ¶ 27.) Defendant used this opportunity to expose himself and grab his genitals. The Amended Complaint also specifically alleges that the Plaintiff was "surprised" by Miller's actions (*Id*. ¶¶39–40.) These allegations are sufficient to plausibly allege that the Assault and Battery was the result of criminal sexual

12

conduct. Therefore, under MCL. § 600.5805(6), the statute of limitations for this claim is ten years.

Accordingly, because this action was filed within the ten year statute of limitations, Defendant's Motion to Dismiss the Assault and Battery Claim from March 3-4, 2018 based on the statute of limitations is DENIED.

### b. Assault and Battery: February 10, 2019

Plaintiff alleges that on February 10, 2019, while the Plaintiff and Defendant Miller were at an RV show (Plaintiff working for another company), Defendant Miller saw Morgan, followed her and approached her. According to the Plaintiff, "Miller was close enough to Morgan to call her a 'f***ing retard' despite an Eaton County probation order compelling Miller to stay away from Morgan, have no contact with her and ignore her." (Amended Complaint, ECF No. 3 ¶ 145.)

Defendant argues that Plaintiff's claim for assault and battery stemming from an incident on February 10, 2019 are insufficient to plead a claim for assault and battery under Michigan Law. Defendant argues that because Plaintiff only alleges that she overheard Miller say that she was a "f***ing retard," and there was no physical contact, the Plaintiff has not sufficiently plead a claim for Assault and Battery.

Under Michigan law,

> An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact. *Tinkler v. Richter,* 295 Mich. 396, 401, 295 N.W. 201 (1940); Prosser & Keeton, Torts (5th ed), § 9, p 39. A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact. *Tinkler, supra;* Prosser & Keeton, *supra.*

*Espinoza v. Thomas*, 189 Mich. App. 110, 119, 472 N.W.2d 16, 21 (1991).

Based on Plaintiff's allegations, she has failed to plead a claim for Assault and Battery, which requires factual allegations leading to "a well-founded apprehension of imminent contact." *Id.* Defendant made no threat of imminent contact and took no actions to indicate he would cause imminent bodily contact or harm. Accordingly, the Assault and Battery claim within Count IX stemming from the incident on February 10, 2019 fails to state a claim upon which relief can be granted. Defendant Miller's Motion to Dismiss this claim is GRANTED.

### c. Motion to Strike References to Criminal Proceedings

Defendant requests, pursuant to Fed. R. Civ. P. 12(f), that the Court strike all references to the allegations of paragraphs 60, 61, and 62 of the Amended Complaint, which detail the criminal proceedings against Defendant Miller arising

from his conduct on March 3-4, 2018, including his indictment and "no contest" plea for disorderly conduct.

Under Fed. R. Civ. P 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant argues that the use of anything related to the allegations in paragraphs 60–62, "fits squarely in the definition of 'impertinent' and 'immaterial,' " and is prohibited by Federal Rule of Evidence 410. (ECF No. 7 PageID.134.)

> Fed. R. Evid. 410 provides:
>
> (a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>     (1) a guilty plea that was later withdrawn;
>     (2) a nolo contendere plea;
>     (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
>     (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

"While this Court has wide discretion to strike 'redundant, immaterial, impertinent, or scandalous' material from a pleading, courts tend to disfavor motions to strike and they are infrequently granted, because a motion to strike 'proposes a drastic remedy.' " *L and L Gold Assoc., Inc. v. American Cash for Gold, LLC,* No. 09–10801, 2009 WL 1658108, at *1 (E.D. Mich. June 10, 2009) (quoting *Stanbury*

15

*Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000)). "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action. 'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that 'detracts from the dignity of the court.' " *Id.* (quoting *Cobell v. Norton,* 224 F.R.D. 1, 5 (D.D.C.2004)); *see State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) (Borman, J.) (denying motion to strike allegations concerning a non-defendant entity).

The admissibility, or lack thereof, of the allegations in the complaint of Defendant's indictment and *nolo contendere* plea does not dictate this Court's decision whether to strike allegations in the complaint. *See Hum. Rts. Def. Ctr. v. Bezotte*, No. 11-CV-13460, 2017 WL 1250683, at *16 (E.D. Mich. Mar. 31, 2017) ("just because evidence is not admissible does not dictate that the district court strike the evidence; it just means that the district court must not consider it [on a motion for summary judgment].") The applicable standard on a motion to strike is that contained Fed. R. Civ. P. 12(f), and Defendant cites no authority for the proposition that inadmissible material must be stricken from the complaint. In *Neal v. City of Detroit*, the court rejected an argument that references to an EEOC determination and underlying exhibits should be stricken from the complaint because that evidence was inadmissible under the Federal Rules of Evidence. The court instead looked to

16

the standard in Fed. R. Civ. P. 12(f), noting that "Defendants have not met the applicable standard by demonstrating that the allegations at issue are redundant, immaterial, impertinent, or scandalous." No. 17-13170, 2018 WL 1399252, at *1 (E.D. Mich. Mar. 19, 2018).

Under the standard set by Fed. R. Civ. P. 12(f), the allegations in the complaint concerning Miller's criminal proceedings are not "immaterial" or "impertinent." The allegations concern the consequences of the Defendant's actions on March 3-4, 2018 that form the basis for this action. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed.2004) ("[T]here appears to be general judicial agreement ... that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice....")

As the Defendant has not met the applicable standard under Fed. R. Civ. P. 12(f) by demonstrating that the allegations are redundant, immaterial, impertinent, or scandalous, the Defendant's Motion to Strike paragraphs 60, 61, and 62 of the Amended Complaint is DENIED.

## IV. Conclusion

(1) Defendant Christopher Miller's Motion to Dismiss (ECF No. 7) the claim for Assault and Battery within Count IX from the incident of March 3-4, 2018 is DENIED;

(2) Defendant Christopher Miller's Motion to Dismiss the claim for Assault and Battery within Count IX from the incident of February 10, 2019 is GRANTED; and

(3) Defendant Christopher Miller's Motion to Strike paragraphs 60, 61, and 62 of the Amended Complaint is DENIED.

SO ORDERED.


Dated: July 28, 2021                s/Paul D. Borman
                                    Paul D. Borman
                                    United States District Judge