UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MORGAN PIANKO,<br>      Plaintiff,<br>v.<br>GENERAL R.V. CENTER, INC.,<br>*et al.*,<br>      Defendants.<br>_____/ | Case No.: 20-13371<br><br>Paul D. Borman<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL
(ECF No. 24) AND GRANTING DEFENDANT MILLER'S
MOTION TO COMPEL (ECF No. 32)**

A. Background

Before the Court are Plaintiff's motion to compel (ECF No. 24) and Defendant Christopher Miller's motion to compel (ECF No. 32). These motions were referred to the undersigned. (ECF Nos. 26, 33). The undersigned heard argument on both motions on April 7, 2022.

Plaintiff sues General R.V. and four General R.V. employees. She worked for General R.V. from May 2014 until March 19, 2018. She alleges defendant Miller sexually harassed and assaulted her during the early morning of March 4, 2018 in his hotel room (employees were lodged at the hotel during a work event that weekend). The remaining defendants (Miller's and Plaintiff's supervisors) did not undertake a serious investigation and allowed the inappropriate conduct to

continue, creating a hostile work environment. (ECF No. 3). Plaintiff also filed a sex harassment and retaliation charge with the Equal Employment Opportunity Commission ("EEOC") on April 9, 2018. The EEOC issued a determination finding "Evidence gathered during the investigation reveals that there is reasonable cause to believe that [Plaintiff's] sex[] harassment and retaliation charges are true." (*Id.* at PageID.60, at ¶ 86). Relevant here, Plaintiff claims General R.V. tolerated a hostile work environment by, among other things, failing to remedy known sex harassment and by not enforcing or ignoring repeated violations of its sex harassment policy. (*Id.* at PageID.62-63).

B.     General Discovery Principles

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery

2

request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

C. Plaintiff's Motion to Compel (ECF No. 24)

This motion concerns emails sent to and received from defendants and non-defendants. Preliminarily, the parties entered into a joint discovery plan which provides that counsel for the parties discussed production of electronically stored information ("ESI"), including non-privileged emails and texts of these individuals: Morgan Pianko, Christopher Miller, Loren Baidas, Chris Davis, Kate Short, Joy Fowler, Wade Stufft, Bob Green, Jason Quillan, and "other General RV employees." (ECF No. 24, PageID.703-04). Counsel agreed on search terms and date parameters on July 27, 2021.

On October 15, 2021, Plaintiff received a partial production of emails from General R.V. (*Id.*). According to the statement of unresolved issues, still outstanding are emails sent or received by Bob Green (a non-party), Jason Quillan (a non-party), Wade Stufft (a non-party), and Loren Baidas containing any of the

3

15 keywords listed, many of which reference body parts or are sexually explicit.[1] Aside from those emails, Plaintiff also requested "fantasy football" emails sent to or received from Loren Baidas.

General R.V. argues the emails from Stufft, Green, and Quillan are irrelevant.

According to General R.V., Wade Stufft left his employment as operations manager at the company in 2018. As operations manager, he was not involved in sales and thus would not have been a supervisor to Plaintiff or defendant Miller. (ECF No. 31, PageID.835-36). According to Plaintiff, Stufft made sure employees received sexual harassment training, and if there was a sexual harassment complaint, he would have been involved. She insists if there are emails to or from Stufft including the keywords, those emails are relevant. (ECF No. 38, PageID.876).

According to General R.V., Green spends only part of the year in Michigan and otherwise works in Tampa, Florida. Green recently testified he did not have any knowledge of the incident involving Miller or Miller's discipline. Yet he had knowledge or was involved in a sexual harassment incident that occurred in 2008 involving a comment Miller made while he was Miller's supervisor. Emails

---

[1] Emails to and from Miller were referenced in the statement of unresolved issues. At the hearing, counsel for Plaintiff confirmed Miller's emails are no longer an issue.

related to that incident have been provided. (ECF No. 31, PageID.836). Plaintiff contends all emails sent to and received from Green containing those keywords are relevant. (ECF No. 38, PageID.875).

Defendant states Quillan has been an operations manager, not involved in sales with Miller, since 2013. He had no supervisory responsibility over Miller or Plaintiff. General R.V. asserts Quillan will not have relevant information. (ECF No. 31, PageID.836-37). Plaintiff contends Quillan was one of her supervisors when she was not working a recreational vehicle show. She states if there was a sexual harassment complaint or investigation involving an employee in the operations department, Quillan would have been involved. Thus, emails with the keywords are relevant. (ECF No. 38, PageID.875-76).

Plaintiff argues emails containing those keywords, if they exist, are relevant to establishing a successful hostile work environment claim against General R.V. In determining whether the harassment is sufficiently severe or pervasive to create a hostile work environment, "the conduct in question must be judged by both an objective and a subjective standard." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 251 (6th Cir. 1998) (quoting *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)). This means that "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Id.*

5

(quoting *Black*, 104 F.3d at 826). Evidence relevant in hostile work environment claims is not limited to incidents involving the plaintiff. That is because courts take a "totality of the circumstances" approach—"the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). "[A]n employer may create a hostile environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself." *Jackson*, 191 F.3d at 661 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)).

It appears some emails Plaintiff seeks were created before her employment or would concern incidents that did not involve her. As the Sixth Circuit has clarified, "the factfinder may consider similar acts of harassment *of which a plaintiff becomes aware during the course of his or her employment*, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 336 (6th Cir. 2008) (emphasis added). Past acts of harassment may be relevant, but "[o]f course, plaintiff must have been aware of these incidents during her employment, even if indirectly, for the accounts of others to be relevant." *Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 262 (6th Cir. 2001) (citing *Abeita v.*

6

*TransAmerica Mailings, Inc.*, 159 F.3d 246, 249 n.4 (6th Cir. 1993) (dismissing as irrelevant testimony concerning harassment about which plaintiff knew nothing during her employment)).

General R.V.'s view that only those emails discussing Plaintiff or Miller and the incident or investigation are relevant is too narrow. *See, e.g.*, *Abeita*, 159 F.3d at 251-52 (considering evidence that employees commented that land next to a Hooters restaurant should be called "Hootersville," "Titsville," or "Twin Peaks," and used the term "broad" to refer to a female). Plaintiff's expansive view of what emails are relevant is too broad and, based on the information before the Court, is likely to capture (if they exist) incidents of harassment of which she knew nothing about and thus irrelevant to the claims.

With these principles in mind, the Court **GRANTS** Plaintiff's motion to compel **IN PART**. Even if Green, Quillan, and Stufft were not directly involved in the Miller incident or in the investigation, evidence showing managers at General R.V. allowed, tolerated, or enabled sexual harassment during her employment are relevant to Plaintiff's hostile work environment claim. General R.V. must produce responsive, non-privileged emails sent or received by these three employees containing any of the 15 keywords **within 10 days** of this Order.[2] That said, the

---

[2] Addressed below is General R.V.'s argument related to withholding emails that contain any of the keywords but are personal and unrelated to work or sexual harassment.

Court limits the time frame of the emails. Before allowing expansive discovery, General R.V. must produce responsive emails created between May 2014 and March 2018. This is without prejudice to Plaintiff seeking emails created before Plaintiff's employment. If it can be shown Plaintiff was aware of past incidents during her employment that were not addressed in the May 2014 to March 2018 emails, the parties must confer on search terms to target specific incidents or conversations that may be contained in emails prior to Plaintiff's employ. As the discovery period is now closed, Plaintiff must make haste in reviewing the production of emails.

The remaining emails concern defendant Loren Baidas, General R.V.'s president and co-owner.[3] The parties conveyed the issue concerning production of his emails containing any of the 15 keywords was resolved. Should a dispute arise regarding this production, the parties must, as soon as possible, contact the undersigned's chambers to schedule a telephonic conference.

Last in the category of emails are Baidas's "fantasy football" emails. General R.V. argues these emails are irrelevant. According to Plaintiff, discovery

---

[3] An issue with production of Baidas's emails was not raised in the opening brief and thus naturally not discussed in General R.V.'s response brief. The issue was raised for the first time in the reply brief. As a general rule, issues raised for the first time in a reply brief may be deemed waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States, Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). This is because the opposing side rarely can respond when an issue is not raised in the opening brief. Here, however, General R.V. had an opportunity to respond both in the joint statement of unresolved issues and at the hearing. Thus, the Court considers the dispute here.

revealed Miller and Baidas had a fantasy football team together called "Wedding Crashers." "Wedding Crashers" appears to refer to a company trip to Mexico where Miller and Baidas crashed a wedding. A fight broke out at that wedding when Miller told a female wedding guest a crude "knock knock" joke about her breasts. (ECF No. 38, PageID.876-77). This incident occurred and the fantasy football team existed before Plaintiff began working at General R.V. Plaintiff contends the wedding crashing incident became well-known at General R.V. and the "fantasy football" emails may contain offensive and misogynistic team names used by other General R.V. employees. She argues these emails would make up part of "all the circumstances" the Court should consider in determining whether there was a hostile work environment.

Again, relevant evidence is here is that of which Plaintiff was aware during her employment. Emails exchanged years before her employment about fantasy football and the "wedding crashers" incident are not relevant. At the hearing, General R.V.'s counsel agreed to search for "fantasy football" in Baidas's email account during the dates of Plaintiff's employment. This search must be conducted **within 10 days** of this Order. Communications at General R.V. about fantasy football or the wedding crash may be relevant. Unlike the emails discussed above, because Plaintiff asserts the wedding crashing incident became well-known at the

9

company, relevant emails are those created since the incident in Mexico through Plaintiff's employment.

The final issue, raised for the first time in reply, concerns privilege logs and emails withheld as irrelevant. As for privilege logs, General R.V.'s counsel specified it has not withheld documents under a legally recognized privilege that have not already been covered in a privilege log. Thus, the Court will not compel production of a privilege log. Of course, should responsive yet privileged documents surface, the parties must submit a privilege log in accordance with the Federal Rules of Civil Procedure.

As for documents withheld as irrelevant, no privilege log is required. The dispute here is whether General R.V.'s counsel may unilaterally determine a document is irrelevant and withhold it as such. According to General R.V.'s counsel, the company is withholding personal emails that contain one of the keywords addressed above. For instance, a search for emails with the word "ball" returned some emails between an employee and a family member about a child's baseball game. While in this example the email is irrelevant to the claims here, Plaintiff's counsel's point is well-taken—we cannot determine exactly how General R.V.'s counsel is defining what is relevant to the claims in every email questioned. Given the contentious nature of the discovery disputes, the lack of clarity on the appropriateness of the irrelevancy determination disrupts the

10

completion of discovery and resolution of this case. Counsel for one party cannot unilaterally determine what is relevant in a document. The Court also finds little risk of harm from production of these emails. The parties entered into a stipulated protective order (ECF No. 18) allowing them to mark documents, such as personal emails, as confidential, affording the documents the protections set forth therein. With these protections available, there is little risk of harm by producing potentially irrelevant or sensitive information. *See Tween Brands Inv., LLC v. Bluestar All., LLC*, 2015 WL 6955177, at *2 (S.D. Ohio Nov. 10, 2015) (ordering production of potentially irrelevant documents to avoid one party unilaterally deciding relevance). General R.V.'s counsel must either produce all the mails containing the keywords **within 10 day**s of entry of this Order, **or** should make arrangements with Plaintiff's counsel to view the questioned emails and determine their relevance at that time.

D.     <u>Defendant Miller's motion to compel (ECF No. 32, 37)</u>

Miller brought this motion to compel initially because Plaintiff had not responded to two requests for production of documents: tax returns and the underlying documents for those tax returns such as Form 1099s or W-2s. (ECF No. 32, PageID.849). After he filed the motion, Plaintiff responded to the requests with objections that Miller argues are insufficient. (ECF No. 37).

Plaintiff asserts she produced her 2019-2021 tax returns, but after a search she could not locate her 2017 or 2018 tax returns or the underlying documents for those and other years. (ECF No. 42). At the hearing, Plaintiff's counsel again stated that Plaintiff did not find missing tax returns or the underlying documentation, although she prepared the returns herself. Counsel also asserted it is Miller's burden to subpoena Plaintiff's former employers for her employment or tax records since Plaintiff does not have the documents herself.

The motion is **GRANTED**. Plaintiff's assertions regarding the burden to search for documents is incorrect. As the party receiving a proper discovery request, Plaintiff has the duty to conduct a diligent search for responsive documents within her custody or control. This means she must undertake another search of documents in her possession. It also means, if the tax returns and underlying documents are not in her possession, she must put forth the effort to obtain them or their equivalent. If she does not have the missing tax returns or underlying documents, she must request transcripts from the IRS for the missing years **within 10 days** of this Order. And to adequately establish Plaintiff's past sources of income, she must contact former employers and obtain copies of her wage and tax records (as these records are hers, they are in her control such that she can obtain copies without much difficulty).

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: April 11, 2022              s/Curtis Ivy, Jr.
                                  Curtis Ivy, Jr.
                                  United States Magistrate Judge