UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORGAN PIANKO,
Plaintiff,

v.

GENERAL R.V. CENTER, INC.,
*et al.*,
Defendants.
______________________________/

Case No.: 20-13371

Paul D. Borman
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 45)**

A. Background

Before the Court is Plaintiff Morgan Pianko's motion to compel against Defendant General R.V. (ECF No. 45). The motion was referred to the undersigned. (ECF No. 47). The parties submitted a statement of resolved and unresolved issues. (ECF No. 61). This Order addresses the unresolved issues.

Plaintiff sues General R.V. and four General R.V. employees. She worked for General R.V. from May 2014 until March 19, 2018. She alleges defendant Miller sexually harassed and assaulted her during the early morning of March 4, 2018 in his hotel room (employees were lodged at the hotel during a work event that weekend). The remaining defendants (Miller's and Plaintiff's supervisors) did not undertake a serious investigation and allowed the inappropriate conduct to

continue, creating a hostile work environment. (ECF No. 3). Plaintiff also filed a sex harassment and retaliation charge with the Equal Employment Opportunity Commission ("EEOC") on April 9, 2018. The EEOC issued a determination finding "Evidence gathered during the investigation reveals that there is reasonable cause to believe that [Plaintiff's] sex[] harassment and retaliation charges are true." (*Id.* at PageID.60, at ¶ 86). Relevant here, Plaintiff claims General R.V. tolerated a hostile work environment by, among other things, failing to remedy known sex harassment and by not enforcing or ignoring repeated violations of its sex harassment policy. (*Id.* at PageID.62-63).

B. General Discovery Principles

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery

request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co*., 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

C. Discussion

This is Plaintiff's second motion to compel against General R.V. The remaining issues, according to the statement of unresolved issues, are (1) whether General R.V. must produce information related to annual compensation and fringe benefits provided to General R.V.'s Wixom sales staff since 2018, (2) whether General R.V. must produce Defendant Loren Baidas's "fantasy football" emails sent or received before May 2014, (3) whether General R.V. must produce Baidas's and Defendant Miller's emails created before May 2014 containing keywords "wedding," "crashers," "wedding crashers," "Hustler," "Gamma Entertainment," "Mile High," and "MileHigh," and (4) whether General R.V. must produce emails sent or received by non-parties Bob Green, Jason Quillan, and Wade Stufft created before May 2014 containing the fifteen keywords addressed in the Court's prior Order on Plaintiff's first motion to compel. (ECF No. 61, PageID.2239-40).

The second and fourth unresolved issues are not properly before the Court. These emails were the subject of Plaintiff's first motion to compel against General R.V., or which the Court heard oral argument. The Court ruled those emails were discoverable, but only those created between May 2014, when Plaintiff's employment began, and March 2018, when her employment ended. (ECF No. 59). Neither party objected to that Order.[1] These issues were not raised in the motion to compel now before the Court. The attempt to bring these issues to light again through the statement of unresolved issues is inappropriate. The Court has already ruled and will not revisit the matter unless there is an objection or proper motion filed.

1. Compensation and Fringe Benefits

Plaintiff argues the compensation and benefits paid to the Wixom location sales staff from 2018 forward is necessary to prove her economic damages. At the time of her termination, she says she was working as a "back-up salesperson and biller" and sold two RVs on two separate occasions. She insists she had the qualifications to become a full-time salesperson. (ECF No. 45, PageID.1263-64).

General R.V. argues the sales staff compensation and benefits are not relevant because Plaintiff was a "biller/office assistant," not a sales employee, between January 2015 and March 2018, although she at times performed sales

[1] The parties have 14 days in which to file an objection.

work at the store. (ECF No. 56, PageID.2024-25). The company contends that sales income largely depends on individual effort and that since a future promotion to sales was speculative, the sales compensation cannot be included in front-pay calculations. (*Id.* at PageID.2025). Further, General R.V. insists that producing compensation information for its employees would be an intrusion into their privacy. Plaintiff says this concern is illusory because, if produced, the information would be subject to the existing protective order and thereby "allay any privacy concerns expressed by General RV." (ECF No. 62, PageID.2243, n. 1).

The motion to compel compensation and benefits information is **GRANTED IN PART**. While Plaintiff was not technically a salesperson, General R.V. stated that Plaintiff worked in sales and does not contest that she sold RVs. Plaintiff states she wanted to be a fulltime salesperson, but whether she would have obtained the position in the future is unclear and speculative. As a result, the proper job comparator for damages calculations is not clear. Considering that the scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad, *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998), the Court finds the compensation and benefits information is relevant to the question of damages. This information, however, may later be found to be inadmissible. In any event, at this stage, evidence need not be admissible to be discoverable. The Court grants

the motion to the extent that General R.V. must produce information regarding what a salesperson would be compensated (base pay and commission per sale) and what benefits for which a sales employee would be eligible for the years requested. General R.V. is not ordered to produce compensation and benefits information for its sales employees during the relevant years.

2. Baidas's and Miller's "Wedding Crasher" Emails

The remaining email dispute is whether General R.V. must produce Baidas's and Miller's emails sent or received before May 2014 that contain the keywords related to "Wedding Crashers," "Hustler," "Gamma Entertainment," "Mile High," and "MileHigh."

To give context to the "wedding crasher" emails, as discussed in the Court's prior Order, Baidas and Defendant Miller crashed a wedding in Mexico while there for a work event. Miller made a demeaning joke to a female wedding guest about her breasts. A man nearby heard the joke and then engaged in a fight with Miller. Plaintiff says this "wedding crasher" event became General R.V. lore, often talked about and laughed about at work. She heard about the fight during her employment, but she did not know what started the fight, i.e., the joke Miller told. (ECF No. 56-2, PageID.2084-85). Plaintiff insists the "Hustler" and other pornography-related email keywords are relevant because Plaintiff is in possession

of an email sent to Miller from Hustler containing graphic pornography and which implicates the other keywords.

Plaintiff seeks these emails for various reasons. First, she argues they will show Baidas participated in or condoned "disparaging comments about women." (ECF No. 62, PageID.2245). Second, she insists the emails are relevant to show Baidas's lack of impartiality during the investigation of Miller and the incident at the hotel. (*Id.* at PageID.2246-47). Finally, she asserts the emails will provide "windows of truth" into Baidas's "mindset and mental processes." (*Id.* at PageID.2247). She says they will show Baidas allowed his male employees to use offensive, misogynistic language. As to Miller specifically, she argues the Hustler and related emails will "show how often Miller received pornography at work." Similar emails sent to Baidas will show "how widespread this conduct was at General R.V." (ECF No. 45, PageID.1263).

The motion to compel production of these emails is **DENIED**. As explained in the Court's prior discovery Order, relevant evidence in a hostile work environment case is that which establishes discriminatory conduct of which Plaintiff was aware during her employment. Such conduct is relevant even if it happened outside of Plaintiff's presence or happened before her employment, but only if she learned about it during her employment. *Wanchik v. Great Lakes Health Plan, Inc.*, 6 F. App'x 252, 262 (6th Cir. 2001).

Two reasons counsel against compelling production of these emails. One is that there has been no suggestion that Plaintiff was aware of the sexual nature of the wedding crashing incident or that she knew that Miller and perhaps others at General R.V. received pornographic emails at work. On the contrary, she testified that she heard about the wedding crash fight during her employment, but she did not know what started the fight, i.e., the sexual joke Miller told to a female guest. (ECF No. 56-2, PageID.2084-85). To the extent the circumstances surrounding these keywords could be considered evidence of harassment (and this is questionable since Plaintiff did not even state other female employees were aware of this), they are irrelevant because of Plaintiff's lack of knowledge of the harassment during her employment. As the case Plaintiff cites suggests, discriminatory conduct towards others is relevant when it is directed at other employees in the same protected group. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999) ("the district court committed error when it deemed irrelevant the overwhelming evidence Jackson proffered documenting discriminatory *conduct towards other African–American employees* at Quanex.") (emphasis added). Without some connection to Plaintiff's or other female employees' knowledge during employment, these emails are not relevant.

Second, her arguments for the relevance of the emails before May 2014, which were largely directed at Baidas, are unavailing. She argues they will show

Baidas made disparaging comments about women, that he had discriminatory propensities, and that he was not impartial during the investigation into the incident between Miller and Plaintiff. Plaintiff has not cited authority suggesting a manager's private comments or emails, even if disparaging towards the protected group, are relevant to a hostile work environment claim when the plaintiff was unaware of the private comments. The last argument—that the emails will be used to attack Baidas's credibility—is connected specifically to the fantasy football emails, (*see* ECF No. 62, pageID.2247-48), not the wedding crashing and pornography emails. This is demonstrated in Plaintiff's last statement in the argument— "When assessing Baidas's credibility, the jury is entitled to know whether Mr. Lilac remembers correctly about Baidas being a part of this fantasy football league with him (ECF No. 45-10, PageID.1767) and to question Baidas's amnesia." (*Id.* at PageID.2248). Because this argument is unrelated to the emails under review now, the Court will not consider it.

The motion to compel emails from prior to May 2014 is **DENIED**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R.

Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: April 25, 2022

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge