UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORGAN PIANKO,
          Plaintiff,

v.

GENERAL R.V. CENTER, INC.;
LOREN BAIDAS; JOY FOWLER;
and CHRISTOPHER MILLER,
          Defendants.
_____/

Case No. 20-cv-13371

Paul D. Borman
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER
DENYING GENERAL R.V. CENTER, INC. AND LOREN BAIDAS'
MOTION FOR RECONSIDERATION (ECF No. 147)**

**Background**

On June 9, 2023, this Court issued an Opinion and Order that, among other things: denied Defendant General R.V. Center, Inc.'s Motion for Summary Judgment on Plaintiff Morgan Pianko's Title VII retaliation claim; denied General's Motion for Summary Judgment on Pianko's ELCRA retaliation claim; denied Defendant Loren Baidas' Motion for Summary Judgment on Pianko's ELCRA retaliation claim; and denied Baidas' Motion for Summary Judgment on Pianko's tortious interference claim. (ECF No. 143, PageID 7810–26.) On the retaliation claims, the Court held that "a reasonable jury could find that General [and Baidas] took a materially adverse action against Pianko by prohibiting her from using her vacation days (and her personal day) during the week of March 19th" and that

1

General and Baidas took this action because Pianko reported Miller's alleged misconduct. (ECF No. 143, PageID 7811–18.) On the interference claim, the Court held that a reasonable jury could find that Baidas tortiously interfered with Pianko's contract with General by retaliating against Pianko in this way. (ECF No. 143, PageID 7820–26.)

Two weeks later, General and Baidas moved for reconsideration of these denials.[1] (ECF No. 147.)

## Legal Standard

Local Rule 7.1(h)(2) provides that "[m]otions for reconsideration of non-final orders are disfavored" but "may be brought," "within 14 days after entry of [an] order," "upon the following grounds:"

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of this prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

---

[1] Fowler joined in this Motion, but the Motion does not request reconsideration of the Court's decision on the only claim remaining against her (conspiracy).

## Discussion

General and Baidas argue that the Court's aforementioned denials were "based upon . . . a mistake[n]" belief that Pianko had "accrued" vacation time that she was entitled to use during the week of March 19, 2018. (ECF No. 147, PageID 7884–85, 7891–93.) General and Baidas assert that Pianko "did not have any accrued vacation days available to her as of March 19," so "the failure to advise" her of the option to take vacation rather than return to work on that date "was not an adverse action" that could sustain her retaliation and tortious interference claims. (ECF No. 147, PageID 7891.)

To support this assertion, General and Baidas attach two exhibits. First, they attach an undated Affidavit in which Defendant Joy Fowler states, in relevant part:

> Based upon [Pianko]'s hire date, May 5, 2014, she would have been granted one week of vacation time [in addition to the five days to be used during "the holiday shutdown . . . between Christmas and New Year"]. This vacation time did not accrue until her seniority date of May 5. If she would have taken any of the time and left her employ prior to May 5, the vacation pay would have been deducted f[ro]m her last paycheck.
>
> . . .
>
> It is my testimony, as Human Resource Manager, that [Pianko] did not have any accrued vacation time as of March 19, 2018.

(ECF No. 147-2, PageID 7897–98); *see also* ECF No. 148 (signed version of the same affidavit). Second, they attach an excerpt of General's 2017 Employee Manual that at least partially corroborates Fowler's Affidavit, explaining in relevant part:

3

> All employees who have a start date from January 1 to June 30 will earn five vacation days that can only be taken during the Christmas to New Year's shutdown during the year in which they are hired. The following January, these employees will have five days that must be taken during the shutdown, plus an additional five days that can be taken throughout the year. However, if an employee takes the additional five days before his or her anniversary date, and leaves General [], the unearned vacation time will be taken from the last paycheck in accordance with applicable law.
>
> . . .
>
> You may take your additional (i.e., not Christmas shutdown) vacation days anytime during the year they have been allowed. However, if these days are used before your anniversary date, and should the employee terminate prior to earning sufficient vacation days to cover the amount paid; the unearned[2] portion that has been paid will be deducted from the employee's final paycheck.

General and Baidas' argument fails for two reasons: 1) it was not before the Court when the Court ruled on their Motion for Summary Judgment, though it could have been; and 2) it does not demonstrate that General's policies prohibited Pianko from using her vacation days during the week of March 19, 2018.

---

[2] The Manual is inconsistent in its use of the term "earned." Between the two paragraphs listed above, which suggest that the five discretionary vacation days are not "earned" until the employee's "anniversary date," the Manual includes a chart indicating that an employee who started work at General between January 1 and June 30, 2014, would, in 2018, "*[e]arn five days on January 1st and five days for Christmas shutdown.*" (ECF No. 147-3, PageID 7903) (emphasis added). But the Court need not rely on this inconsistency to resolve the Motion before it. So for now, the Court will disregard the chart mentioned in this footnote and focus only on the paragraphs reproduced above.

4

**1. General and Baidas' argument was not before the Court when the Court ruled on their Motion for Summary Judgment, though it could have been.**

General and Baidas concede that a Motion for Reconsideration "is not a vehicle . . . to advance a position that could have been advanced earlier" but was not. (ECF No. 147, PageID 7892) (citing *McKelvey v. Green*, No. 07-14538, 2013 WL 5576340 (E.D. Mich. Oct. 10, 2013)). Yet they attempt to use their Motion for Reconsideration for exactly that purpose.

To begin with, the new exhibits that General and Baidas rely on in their Motion for Reconsideration were not properly before the Court when it ruled on summary judgment. Federal Rule of Civil Procedure 56(c)(3) provides that, in deciding a motion for summary judgment, "[t]he court need consider *only* the cited materials, [though] it *may* consider other materials in the record." (Emphasis added.) General and Baidas did not cite the new exhibits in their summary judgment briefing. And in fact, the new exhibits were not previously in the record at all. Thus, the Court was not able, let alone obligated, to consider them.[3]

---

[3] General and Baidas attached to their Motion for Summary Judgment the portions of the 2017 Manual that deal with Sexual Harassment and Standards of conduct. *See* ECF No. 96-6. But they did not include the Paid Time Off portion on which they rely here.
    Pianko attached the entire *2015* Manual to her Motion for Partial Reconsideration of Magistrate Judge Curtis Ivy, Jr.'s Order Granting in Part her Motion to Compel. *See* ECF No. 75-2. That Manual includes the same Paid Time Off policy as the 2017 Manual does. *Compare* ECF No. 75-2, *with* ECF No. 147-3. But that Manual is not the *2017* Manual presented here. And General and Baidas did not cite to that 2015 Manual's vacation policy in their summary judgment briefing either.

5

Next, General and Baidas' argument was not properly before the Court when it ruled on summary judgment. General and Baidas did not argue that Pianko had no "accrued vacation days" left in their summary judgment briefing, even after Pianko asserted that ordering her back to work on March 19th was an adverse action. And when the Court asked General and Baidas' counsel, at the Hearing on summary judgment, why Fowler's letter ordering Pianko back to work did not mention the alternative of her using vacation days, General and Baidas' counsel responded that she *did not know* if Pianko had any vacation available at that time—she did not say that Pianko did *not* have any vacation available.

Finally, there is no reason why General and Baidas could not have presented the facts in their new exhibits and their new argument earlier. The facts could have been uncovered with "reasonable diligence" during discovery. And the argument could have been raised in the summary judgment briefing, which dealt extensively with the issue of whether ordering Pianko back to work on the 19th had a basis in General's policies, or at the very least at the Hearing, at which the Court raised the issue of whether Pianko could have taken vacation during the week of the 19th.

**2. General and Baidas' argument does not demonstrate that General's policies prohibited Pianko from using her vacation days during the week of March 19, 2018.**

Even if General and Baidas' new argument was properly before the Court, it would be unavailing. As noted above, the Court's June 9 Opinion held that General

and Baidas might have engaged in retaliation by depriving Pianko of her freedom to use her vacation days during the week of March 19th. In support of this holding, the Court noted that General had "not offered any explanation for this [deprivation]: it ha[d] not, for example, shown that Pianko had no vacation days left at that time, nor that she could not request vacation on such short notice, nor that her absence would have created significant staffing issues." (ECF No. 143, PageID 7815.) General and Baidas' new argument does not undermine the Court's conclusion. To the contrary, it actually confirms that Pianko had the discretion to use her "additional five days" at just about any time "throughout the year."[4] (ECF No. 147-3, PageID 7903.)

It does not that matter that Pianko would have had to reimburse General for the five vacation days if she had taken them during the week of March 19th *and then* left General before her anniversary on May 5th. Presumably, General, Baidas, and Fowler did not know that Pianko was going to leave General before May 5th when they ordered her back to work on March 19th. Plus, Fowler could have informed Pianko of the reimbursement requirement if she had responded to Pianko's March 9th statement that she was willing to use her vacation time. The important thing is

---

[4] The Manual does provide at least one limitation on this discretion: "No vacations can be taken during our busy selling season without management approval." (ECF No. 147-3, PageID 7902.) But, as the Court noted in its prior Opinion, (ECF No. 143, PageID 7815), General and Baidas have not argued that the week of March 19th fell within the busy season, nor that General was too busy to spare Pianko at that time.

that the requirement did not categorically prevent Pianko from taking her vacation when she wished to do so.

Neither does the Court's single use of the phrase "accrued vacation days" change anything. General and Baidas seize on this phrase, and Fowler's new Affidavit states that Pianko "did not have any accrued vacation time as of March 19, 2018." (ECF No. 147-2, PageID 7898.) But the Court's use of the phrase, in the context described above, referred to Pianko's matured and enforceable right—absent some other countervailing force—to *take* vacation for five days starting on March 19th, not to her right to *be paid* for those vacation days and to *keep* such payment. *Cf. Accrue*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To come into existence as an enforceable claim or right; to arise . . . ."); *Accrued Right*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A matured right; a right that is ripe for enforcement (as through litigation).").

## Conclusion

For the reasons listed above, General and Baidas have not proven that the Court made a mistake in its June 9, 2023 Opinion and Order. General and Baidas' Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

s/Paul D. Borman  
Paul D. Borman  
United States District Judge

Dated: June 27, 2023

8