UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORGAN PIANKO,

        Plaintiff,

                                        Case No. 20-cv-13371

v.                                  Honorable Linda V. Parker

GENERAL R.V. CENTER, INC.,
LOREN BAIDAS, CHRISTOPHER
DAVIS, JOY FOWLER, and
CHRISTOPHER MILLER,

        Defendants.
_____/

## **OPINION AND ORDER**
## **GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION**
## **FOR ATTORNEY'S FEES AND COSTS (ECF NO. 183)**

       This matter is presently before the Court on Plaintiff Morgan Pianko's

motion for an award of attorney's fees and costs following the settlement of her

remaining claims against Defendants General R.V. Center, Inc. ("General R.V."),

its President Loren Baidas, and Human Resources Manager Joy Fowler.  Plaintiff

seeks attorney's fees for her counsel, Michael C. Curhan, totaling $1,509,613.50

and costs of $65,410.  (*See* ECF No. 183; ECF No. 187-1 at PageID. 9458 ¶ 15.)

She also seeks prejudgment interest on both.  (*See* ECF No. 183.)  General R.V.,

Mr. Baidas, and Ms. Fowler challenge the amounts sought, as well as the

appropriateness of prejudgment interest.  (*See* ECF No. 185.)  For the reasons

discussed below, the Court grants in part and denies in part Plaintiff's motion.

## I.      Factual and Procedural Background

On December 23, 2020, Plaintiff filed this lawsuit against General R.V., Mr.

Baidas, Ms. Fowler, General R.V.'s Vice-President of Finance Christopher Davis,

and its Corporate Sales Director Christopher Miller.  The lawsuit arose from Mr.

Miller's alleged sexual assault of Plaintiff on March 3, 2018, while Plaintiff, Mr.

Miller, and other General R.V. employees were staying at a hotel for a recreational

vehicle show, and the remaining defendants' response when Plaintiff subsequently

reported the incident.  In an Amended Complaint, Plaintiff alleged the following

claims: (1) sex harassment discrimination in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII") against all Defendants; (2) sex harassment

discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act

("ELCRA") against all Defendants; (3) retaliation in violation of Title VII against

all Defendants; (4) retaliation in violation of the ELCRA against all Defendants;

(5) tortious interference with a business relationship against Mr. Miller; (6) tortious

interference with a business relationship against Mr. Baidas; (7) civil conspiracy

against all Defendants; (8) intentional infliction of emotional distress against Mr.

Miller; and (9) assault and battery against Mr. Miller.  (ECF No. 3.)

Early in the litigation, the Honorable Paul D. Borman, to whom this case was first assigned, dismissed part of the assault and battery claim against Mr. Miller.  (*See* ECF No. 14.)  Defendants General R.V., Mr. Baidas, Mr. Davis, and Ms. Fowler then moved for summary judgment (ECF No. 96), and Mr. Miller moved for partial summary judgment (ECF No. 104).  On May 23, 2023, Judge Borman issued a decision granting summary judgment to Mr. Davis in full, to Mr. Baidas and Ms. Fowler on Plaintiff's Title VII claims; and to Mr. Miller on Plaintiff's ELCRA retaliation, tortious interference, and conspiracy claims.  (ECF No. 139.)  On June 9, 2023, Judge Borman issued another decision granting summary judgment as follows: (a) to Mr. Miller on Plaintiff's Title VII claims; (b) to Mr. Baidas and Ms. Fowler on Plaintiff's ELCRA sex discrimination claim; (c) to Ms. Fowler on Plaintiff's ELCRA retaliation claim; and (d) to General R.V. on Plaintiff's civil conspiracy claim.  (ECF No. 143.)

Plaintiff thereafter settled her claims against Mr. Miller, resulting in a January 9, 2024 stipulated order dismissing him as a party.  (ECF No. 163.)  This left the following claims in Plaintiff's Amended Complaint for trial: Title VII and ELCRA sexual harassment discrimination against General R.V.; retaliation under Title VII and ELCRA against General R.V. and under ELCRA against Mr. Baidas; tortious interference against Mr. Baidas; and civil conspiracy against Mr. Baidas

3

and Ms. Fowler.  On January 29, 2024, Judge Borman recused himself and the matter was assigned to the undersigned.  (ECF No. 164.)

A final pretrial conference was thereafter scheduled for June 12, 2024.  At the conference, a settlement agreement was reached between Plaintiff and General R.V., Mr. Baidas, and Ms. Fowler (hereafter collectively "Defendants").  Pursuant to that agreement, Defendants agreed to pay Plaintiff $300,000 in exchange for the prejudicial dismissal of her claims against them, and have the Court determine the amount of attorney's fees and costs to be awarded Plaintiff under Title VII and ELCRA as a prevailing party.  (*See* ECF No. 182.)  Plaintiff subsequently filed the pending motion for attorneys' fees and costs, which has been fully briefed.  (ECF Nos. 183, 185, 187.)

## II.    Attorney's Fees

### A.    Legal Standard

In a Title VII action, "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ."  42 U.S.C. § 2000e-5(k).  Similarly, ELCRA provides that "[a] court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant . . . if the court determines that the award is appropriate."  Mich. Comp. Laws § 37.2802.

4

The parties agree that Plaintiff is a "prevailing party" entitled to some award in this case.

As reflected above, only "reasonable" attorney fees and costs are recoverable. "[A] reasonable attorney's fee award is one that is adequate to attract competent counsel but . . . [that does] not produce windfalls to attorneys." *Blum v. Stevenson*, 465 U.S. 886, 893, 897 (1984) (internal quotation marks and citation omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (cleaned up) (explaining that the goal of the fee-shifting statutes is "to induce a capable attorney to undertake the representation of a meritorious civil rights case" . . . "not to provide a form of economic relief to improve the financial lot of attorneys"); *Adcock-Ladd v. Sec'y of Treasury*, 277 F.3d 343, 349 (6th Cir. 2000). The starting point for calculating a reasonable fee award is assessing the "lodestar." *Adcock-Ladd*, 277 F.3d at 349 (quoting *Hensley v. v. Eckerhart*, 461 U.S. 424, 433 (1983)); *Smith v. Khouri*, 751 N.W.2d 472, 479-80 (Mich. 2008). "There is a 'strong presumption that the lodestar figure . . . represents a 'reasonable' fee." *Barrow v. City of Cleveland*, 773 F. App'x 254, 268 (6th Cir. 2019) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*)).

The lodestar is "the proven number of hours reasonably expended on the case by an attorney, multiplied by [the attorney's] court-ascertained reasonable

hourly rate." *Id.* (quoting *Hensley*, 461 U.S. at 433). It is the movant's burden to establish entitlement to an award, *Fox v. Vice*, 563 U.S. 826, 838 (2011), including showing that the requested hourly rate(s) and hours billed are reasonable, *see Blum v. Stevenson*, 465 U.S. 886, 897 (1984); *see also Hensley*, 461 U.S. at 437. To that end, the party seeking an award must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The Supreme Court has instructed reviewing courts to exclude fees that were not "reasonably expended[.]" *Id.* at 434.

After calculating the lodestar, the court may adjust the fee award in light of relevant factors. *See Adcock-Ladd*, 227 F.3d at 349 (citing *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)). The Sixth Circuit has identified twelve:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 349 n.8 (quoting *Reed*, 179 F.3d at 471-72 n.3).[1]  However, these factors constituted a separate balancing test used by the courts to assess a reasonable attorney fee, "before the lodestar became 'the guiding light of [the Supreme Court's] fee shifting jurisprudence.'"  *Murphy v. Smith*, 583 U.S. 220, 227 (2018) (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Since the adoption of the lodestar as the presumptively reasonable fee, *Delaware Valley I*, 478 U.S. at 565, the Supreme Court has warned lower courts not to place "undue reliance" on these factors, finding that most are already subsumed in the lodestar calculation,[2] *see Perdue*, 559 U.S. at 553 (citing *Delaware Valley I*, 478 U.S. at 566); *see also id.* (citations omitted) (reiterating "that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation").  Nevertheless, the Court has indicated that "[t]he lodestar method was never intended to be conclusive in all circumstances." *Perdue*, 559 U.S. at 553.  "[T]he strong presumption that the lodestar figure is reasonable . . . may be overcome in those rare circumstances in which [it] does not

---

[1] Michigan courts rely on similar factors.  *See Smith v. Khouri*, 751 N.W.2d at 479 (citations omitted).

[2] For example, the novelty and complexity of a case "presumably are fully reflected in the number of billable hours recorded by counsel" and the hours determined to be "reasonable." *Perdue*, 559 U.S. at 553 (citation omitted). Similarly, the quality of an attorney's performance is part of fixing the attorney's reasonable hourly rate. *Id*.

adequately take into account a factor that may be properly considered in determining a reasonable fee."[3] *Id.* at 553-54.

Moreover, the presumption is dependent on counsel using "billing judgment." *Hensley*, 461 U.S. at 434. As the Supreme Court explained in *Hensley*: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (quotation marks and citation omitted).

Notably, when assessing whether counsel has exercised billing judgment, district courts need not act as "green-eyeshade accountants" who attempt to "achieve auditing perfection." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox*, 563 U.S. at 838). Neither Supreme Court nor Sixth Circuit precedent require courts "to cull through the records and conduct a[] line-item review." *Id.* at 713 n.11. Rather, district courts "must simply . . . do 'rough justice.'" *Id.* at 703. (quoting *Fox*, 563 U.S. at 838). "This

---

[3] The Michigan Supreme Court has similarly warned lower courts to focus on the lodestar calculation and rely on remaining factors only when appropriate. *See Khouri*, 751 N.W.2d at 479-80.

8

means that the court can rely on estimates based on its 'overall sense of a suit.'" *Id*. (quoting *Fox*, 563 U.S. at 838).

To that end, the Sixth Circuit "has recognized the propriety of an across the board reduction" where a sampling of the billing invoice reflects that a reduction is warranted, as opposed to line-by-line reductions. *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228 (2005) (citing *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986)); *see also Hensley*, 461 U.S. at 436-37 (stating that trial courts "may simply reduce the award" instead of "attempt[ing] to identify specific hours that should be eliminated"). This method is particularly appropriate when fee documentation is voluminous. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ( Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources.").

Attorney fee petitions should not "generate 'satellite' disputes over fees" or "prompt 'a second major litigation[.]'" *McQueary v. Conway*, 614 F.2d 591, 598 (6th Cir. 2010) (first quoting *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); then quoting *Hensley*, 461 U.S. at 437).

### B.    Analysis

Plaintiff seeks fees for the 2,418.9 hours billed by Mr. Curhan at hourly rates from $600-$675. (*See* ECF No. 183-3; ECF No. 187-1 at PageID. 9458 ¶ 15 (adding 33.3 hours billed between August 1 and September 4, 2024).)

9

### 1. Reasonable Hourly Rate

Plaintiff asserts that hourly rates ranging from $600-$675 are reasonable when compared to the billing rates in the State Bar of Michigan's Economics of Law Practice Attorney Income and Billing Rate Summary Report ("Michigan Bar Survey Data").[4]  She relies on the 2023 publication.  She points to the $650 hourly rate in the 95th percentile for lawyers like Mr. Curhan: plaintiff employment lawyers, lawyers with more than 35 years' experience, or lawyers with offices in Oakland County.  Plaintiff also provides affidavits from two employment and civil rights litigators, who offer their opinion that Mr. Curhan's billing rates are reasonable.  (*See* ECF Nos. 183-5, 183-6.)

Defendants disagree.  They argue that the median or mean (average) hourly rate is more appropriately applied.  Those rates for employment lawyers, according to the 2023 Michigan Bar Survey Data, were $400 and $412, respectively.  (ECF No. 185 at PageID. 9432.) For civil rights lawyers, those rates were $350 and $381, respectively.[5]  (*Id.*)

---

[4] Plaintiff did not attach a copy of the 2023 Michigan Bar Survey Data to her brief, although Defendants did.  (*See* ECF No. 185 at PageID. 9427-37.)

[5] As this case was filed in 2020, Defendants also urge the Court to consider the State Bar of Michigan's 2020 publication.  According to the 2020 Michigan Bar Survey Data, the median and mean hourly rates for plaintiff employment attorneys were $350 and $345, respectively.  (ECF No. 185 at PageID. 9417.)  For civil rights lawyers, those rates were $305 and $332, respectively.  (*Id.*)  The median

When determining the reasonable hourly rate, courts consider the "prevailing market rates in the relevant community," *Blum*, 465 U.S. at 897, which is the "locale of the court in which the case is pending," *Adcock-Ladd*, 277 F.3d at 350.  District courts frequently look to the Michigan Bar Survey Data for those rates, and they utilize the relevant average billing rates.  *See, e.g., Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015) (citing cases).  The Sixth Circuit has approved this practice.  *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 500-02 (2006).

The average rates, rather than a higher percentile, are more appropriately applied as the fee-shifting statutes "only guarantee[] [prevailing parties] competent counsel, not the best and/or most expensive counsel."  *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich. 2005); *see also Coulter*, 805 F.2d at 148-49 ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."); *Robinson v. City*

---

and mean rates for lawyers practicing more than 35 years were $295 and $317, respectively.  (*Id.* at PageID. 9415.)  The rates for lawyers practicing in the area of Oakland County where Curhan's offices are located (i.e., south of M-59) were $300 and $320, respectively.  (*Id*. at PageID. 9416.)  According to the 2023 Michigan Bar Survey Data, the median and mean rates for lawyers practicing more than 35 years were $300 and $339, respectively.  (*Id.* at PageID. 9430.)  The rates for lawyers practicing in the relevant area of Oakland County were $325 and $354, respectively.  (*Id.* at PageID. 9431.)

*of Edmond*, 160 F.3d 1275, 1288 (10th Cir. 1998) ("Fee-shifting statutes . . . do not permit an award of fees charged by 'the best attorneys that money can buy' if those rates exceed the prevailing market rate for similar services."). As Defendants indicate, the average hourly rate in 2000 and 2023 for plaintiff employment lawyers in Michigan were $345 and $412, respectively. (ECF No. 185 at PageID. 9417, 9432.) Based on these figures, the Court finds Defendants' suggested hourly rate of $400 (*see id.* at PageID. 9289) to be reasonable.

## B. Reasonable Hours

Defendants raise several objections to the hours Mr. Curhan billed in this litigation, which Plaintiff includes in her fee request. They contend that Mr. Curhan's invoice includes categories of non-compensable items and excessive hours for the activities listed. Defendants also contend that the requested attorney fee award is excessive when considered in light of the relief Plaintiff obtained.

### i. *Non-Compensable Activities*

#### a. *Attendance at Seminars*

Mr. Curhan has billed for the hours he spent attending seminars: a deposition NELA seminar on May 17, 2022, a jury selection seminar on November 17, 2022, and a seminar regarding the use of graphics and visual aids on May 31, 2023.[6]

---

[6] Defendants attribute 12.1 hours to these activities. In fact, it is impossible to discern the exact time Mr. Curhan spent attending seminars due to his pervasive

(*See* ECF No. 183-3 at PageID. 9200-01, 9214, 9128.)  Defendants maintain that these activities were not necessary to litigate this matter.  Further, as Mr. Curhan describes himself as an extensively experienced plaintiff's employment and civil rights litigator, Defendants wonder why these seminars were necessary.  This Court agrees, and is therefore deducting 12.1 hours from its lodestar calculation. *See, e.g., Fleischhauer v. Feltner*, 3 F.3d 148, 150 n.5 (6th Cir. 1993) (listing attendance at a seminar as a "glaring instance[]" of the "overreaching" in the attorney's billed hours); *Harkless v. Husted*, No. 1:06-cv-02284, 2011 WL 2149179, at *11 (N.D. Ohio Mar. 31, 2011), *report & recommendation adopted in* 2011 WL 2149138 (N.D. Ohio May 31, 2011) (including a lawyer's attendance at a seminar among the list of "non-compensable items" or "billing for extravagant

---

block billing—a practice Defendants note in their response brief.  (*See* ECF No. 185 at PageID. 9286 n.1.)  Block billing is not per se improper, provided the descriptions of the work performed are adequate, which they are here.  *See Husted*, 831 F.3d at 705 n.7 (citing *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014); *Pittsburgh & Conneaut Dock Co. v. Office of Worker's Comp. Program*, 473 F.3d 253, 273 (6th Cir. 2007) (Moore, J., concurring in part and dissenting in part)).  Nevertheless, block billing is problematic for purposes of a court's reasonableness inquiry when it prevents the court from determining the discrete time each task required.  Where the Court has found it impossible to estimate the hours Mr. Curhan spent on each task contained in a block billing, where one or more tasks is found unreasonable, it will deduct the total hours billed.  The Court elects this approach as "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates" and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley*, 461 U.S. at 433, 436.

and unnecessary items"); *Kenner v. Dep't of the Army*, 136 F.R.D. 140, 147-48

(M.D. Tenn. 1991), *aff'd*, 956 F.2d 269 (6th Cir. 1992) (finding it "not at all

reasonable" to bill for a seminar to learn the law underlying the plaintiff's claim).

       b.    *Review of News Articles & Books*

Defendants also contend that the hours Mr. Curhan billed for his review of

periodicals and books on sexual harassment lawsuits are not reasonably included in

the lodestar calculation.  There are several entries reflecting such general

educational activities rather than research necessary for the case.  (*See* ECF No.

183-3 at Page ID. 9173, 9204, 9205, 9209, 9212-13, 9215.)  Such hours are not

reasonably billed to this matter, as "hours spent familiarizing oneself with the

general area of law should be absorbed in the firm's overhead and not be billed to

the client."  *Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243. 1253 (10th

Cir. 1998) (quotation marks and citation omitted); *see also Praseuth v.*

*Rubbermaid, Inc.*, 406 F.3d 1245, 1258 (10th Cir. 2005) ("When counsel is

inexperienced, a losing party should not be obligated to pay for that counsel's legal

education."); *Gastineau v. Wright*, 592 F.3d 747 (7th Cir. 2010) (finding rate

reduction appropriate where "a substantial portion of the hours billed were to

compensate [the attorney] for learning this area of the law"); *In re New Boston*

*Coke Corp.*, 299 B.R. 432, 445 (Bankr. E.D. Mich. 2003) ("Generally, holding an

intra-office conference for the purpose of training attorneys is not compensable."). The Court is deducting the 22.6 hours billed under this category.

### c.   Attendance at Hearings in Other Matters

Mr. Curhan's attendance at hearings in other matters before Judge Borman and the undersigned, sometimes with Plaintiff, are included in Plaintiff's lodestar calculation.  (*See* ECF No. 183-3 at PageID. 9128, 9236, 9237.)  Courts have disallowed time spent "scouting" the presiding judge.  *See, e.g., Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 264 F. Supp. 2d 763, 768-69 (S.D. Ind. 2003) (citing *Thermovac Indus. Corp. v. Virtis Co.*, 159 U.S.P.Q. 349, 354-55 (S.D.N.Y. 1968)).  This Court will do so here, too.  It is therefore removing an additional 10 hours from the total billed.[7]

Shortly after the incident that gave rise to this lawsuit, Plaintiff filed a criminal complaint against Mr. Miller.  Ingham County prosecutors then brought misdemeanor assault and battery charges against him.  Plaintiff also filed a civil lawsuit against Mr. Miller in state court, alleging assault and battery.  The civil lawsuit was pending from February 2020 until February 10, 2021, when the state court dismissed the case without prejudice at Plaintiff's request.  Mr. Curhan's invoices include numerous entries for his attendance at these civil and criminal

---

[7] This deduction does not include 2.9 hours billed on May 31, 2022 (ECF No. 183-3 at PageID. 9128), as that time includes an activity already found to be unreasonably concluded and, due to block billing, was already removed.

proceedings.  (*See* ECF No. 183-3 at PageID. 9145-9231.)  The Court finds these hours improperly included, as they were not expended "on the litigation." *Hensley*, 461 U.S. at 433.  Therefore, an additional 156.8 hours are deducted.[8]

### d.   Work at the EEOC Level

Defendants seek to exclude the 368.8 hours Mr. Curhan billed for work performed in connection with Plaintiff's EEOC charge.  Defendants acknowledge that time spent in connection with administrative proceedings is compensable.  However, relying on *Webb v. Board of Education of Dyer County*, 471 U.S. 234 (1985), they maintain that hours billed for work at the administrative level are compensable *only if* the work was "useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Id.* at 243.

*Webb* is inapplicable, however, as it involved a fee award under 42 U.S.C. § 1988 in connection with a civil rights claim under 42 U.S.C. § 1983.  "The time that is compensable under § 1988 is that reasonably expended *on the litigation*." *Id.* at 242 (quotation marks and citation omitted).  Because nothing in § 1983 requires a plaintiff to exhaust his or her administrative remedies before filing suit, the Supreme Court concluded that work at the administrative level was not part of

---

[8] Defendants indicate that the bills reflect 21.9 hours spent on Mr. Miller's criminal proceeding and 134.9 on the state court lawsuit.  Plaintiff argues that these activities are compensable but does not dispute Defendants' totals.

the litigation, and therefore was not compensable, *unless* shown to be "useful" and "necessary to advance" the lawsuit. *Id.* at 243. The fee-shifting statutes here, however, authorize attorney fee awards for work done in connection with the mandatory administrative proceedings. *See N.Y Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61 (1980).

Defendants offer no other reason to completely deduct the hours billed by Mr. Curhan for work related to the EEOC proceedings. Thus, the Court declines to do so. Courts have the discretion to award attorney fees based on the hours expended during mandatory EEOC administrative proceedings provided those pre-suit hours—just like the hours spent during the litigation—were reasonable. The reasonableness of the hours billed are discussed separately.

### e.   *Activities Related to Mr. Miller*

According to Mr. Curhan, he excluded the hours in his invoice that were devoted exclusively to Mr. Miller (74.2 "Miller" hours) but included "time spent addressing common core of facts and legal theories relating to" Plaintiff's claims against all defendants. (*See* ECF No. 183-7 at PageID. 9269 n.2; ECF No. 187-1 at PageID. 9455 ¶ 9.) Defendants dispute this, asserting that the invoice still includes activities related to Mr. Miller, only. As examples, they point to Mr. Curhan's inclusion of the time he spent responding to motions filed by Mr. Miller, preparing motions against him, and even the negotiation of the settlement agreement between

Plaintiff and Mr. Miller. (*See, e.g.*, ECF No. 183-3 at PageID. 9164-65 (time spent in connection with Mr. Miller's motion to strike and in limine); *id.* at PageID. 9168-70 (time responding to Mr. Miller's motion to dismiss); *id.* at PageID. 9202 (hours billed in connection with default against Mr. Miller for perjury).) According to Defendants, these activities total 343.4 hours.

The Court is reducing these hours from the lodestar calculation because they relate to activities not justifiably charged to Defendants.

### f. *Premature Trial Preparation*

Defendants challenge the reasonableness of the hours included in Mr. Curhan's invoice for "premature[]" trial preparation. Defendants indicate that there are 93.8 hours in this category. The Court finds some additional procedural background relevant to assessing the reasonableness of these hours.

The initial Scheduling Order in this matter set *inter alia* a dispositive motion deadline with the final pretrial conference and trial dates to be determined. (*See* ECF No. 13.) The dispositive motion deadline, after several stipulated adjournments, was July 25, 2022 (*see* ECF No. 85), and summary judgment motions were filed before that deadline (*see* ECF Nos. 96, 104). Judge Borman decided those motions in May and June 2023. (ECF Nos. 139, 143.)

On December 5, 2023, a Pretrial Scheduling Order was issued, which included a final pretrial conference date of February 20, 2024, but set no trial date.

(ECF No. 158.)  Then, on January 29, 2024, Judge Borman recused himself from the matter.  (ECF No. 164.)

This Court scheduled an immediate status conference, which was eventually held on February 8.  During that conference, the possible amendment of Plaintiff's witness list to add her current treating therapist was discussed, as well as the need for further discovery if this addition was allowed.  (*See* 2/8/24 Text Only Entry.) The Court instructed the parties to depose the new therapist within 30 days, and if they then could not agree on whether she should be allowed as an additional trial witness, Plaintiff should file a motion seeking the Court's permission.  (*Id.*)  The Court communicated that it would only issue a scheduling order setting a new final pretrial conference date and a trial date once the issue was resolved.  (*Id.*)

Most of the "premature" activities challenged by Defendants were performed before Judge Borman's summary judgment decisions.  In fact, counsel was preparing jury instructions, direct examination questions, and a memo "regarding ideas for educating jury to award emotional distress damages to Plaintiff based on her life expectancy" shortly after the dispositive motions were *filed*.  (*See* ECF No. 183-3 at PageID. 9212.)  Before Judge Borman's rulings, counsel also worked on his opening statement and closing argument, researched "flagging juror bias," and prepared additional jury instructions.  (*Id.* at PageID. 9213-17.)  Some trial preparation activities occurred after Judge Borman's

19

decisions.  (*See id.* at PageID. 9231-33, 9236, 9238, 9238.)  Nevertheless, it is

unreasonable to bill a client—thus, also, to seek a fee award from an opposing

party—for trial-related activities months before a trial date is even scheduled or,

once scheduled, when that date remains months away.

Therefore, the Court is deducting another 93.8 hours from its lodestar

calculation.

> ii.   <u>Reductions for Excessive and/or Otherwise
>        Unreasonable Hours</u>

Defendants argue that Mr. Curhan's work on unsuccessful, frivolous, and

unfiled motions also should be excluded from the lodestar calculation.  This

includes 88.4 hours billed for motions addressing the admissibility of the EEOC

determination at trial.  It also includes 121.7 hours associated with an unsuccessful

motion regarding salesperson compensation and a never-filed motion regarding the

spoliation of evidence.

Defendants also argue that Mr. Curhan's invoice includes excessive time

spent on research (289 hours), premature deposition preparation (163 hours), and

the drafting of Plaintiff's proposed final pretrial order (29.9 hours), settlement

conference statement (25.1 hours), response to Defendants' summary judgment

motion (91 hours), and attorney's fee petition (71.3 hours).  Defendants ask the

Court to reduce the hours billed by varying percentages (50-75%) to account for

counsel's inflation.

A line-by-line assessment of the almost 500 hours billed by Mr. Curhan for these activities to determine their reasonableness is not required and would be an inefficient use of judicial resources. As a general matter, time spent researching and preparing motions addressing issues that never arose, and which, therefore, did not contribute to Plaintiff's success in this litigation, are not reasonably included. Similarly, research on issues and the preparation of motions not relevant to Plaintiff's claims against Defendants should not be billed to them. For example, counsel's invoice includes research regarding assault and battery and intentional infliction of emotional distress—claims brought only against Mr. Miller. (*See* ECF No. 183-3 at PageID. 9147, 9155.)The research entries reflect time spent getting up-to-speed on the law, which, as already discussed, is not chargeable to one's client. *See supra*; *see also Castaneda-Castillo v. Holder*, 723 F.3d 48, 80 (1st Cir. 2013) (quoting *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992)) ("Fee awards are not intended 'to serve as full employment or continuing education programs for lawyers and paralegals.'"). The entries also reflect research conducted prematurely. For example, time is billed for research on October 31, 2018—more than two years before Plaintiff filed this action—for research regarding an attorney fee decision, and for time on February 24, 2020 (again before the lawsuit was filed) for researching fees awarded on a jury verdict. (*Id.* at PageID. 9150, 9154.) The Court agrees with Defendants that the hours billed for other activities (e.g.,

25.1 hours to prepare Plaintiff's settlement statement; 71.3 hours on the fee

petition) also are excessive.

In fact, the Court finds counsel's billings to be generally excessive or padded

given that this need not have been an overly complex case. The docket does not

reflect the "Stalingrad-like defense" Plaintiff claims Defendants employed. (*See*

ECF No. 183-1 at PageID. 9131-32.) Defendants' motions were not frivolous. In

fact, they prevailed at least in part on most of them. Nor were any delays in the

proceedings attributable solely to Defendants. Yet, even if Defendants' defense

tactics could be described as unduly aggressive, that does not explain the

unreasonable time Mr. Curhan expended responding to those tactics. Notably,

although Plaintiff provides affidavits from other experienced counsel attesting to

the reasonableness of her counsel's requested hourly rate, those attorneys do not

opine on the reasonableness of the time billed. (*See* ECF Nos. 183-5, 103-6.)

For these reasons, the Court concludes that an across-the-board reduction is

needed to "trim the fat" from counsel's invoice. The Court finds a 50% reduction

warranted. *See, e.g.*, *Am. Wrecking Corp. v. Sec. of Labor*, 364 F.3d 321, 331

(D.C. Cir. 2004) (reducing request for attorney's fees by 50% because counsel

billed "an excessive amount" of hours); *Goodwin v. Metts*, 973 F.2d 378, 384 (4th

Cir. 1992) (upholding an approximate 50% reduction for excessive billing); *Tr. of*

*United Teamster Fund v. J.B. Mufflers, Inc.*, No. 07 CV 1425, 2008 WL 2114955,

at *6 (E.D.N.Y. May 19, 2008) (finding a 50% reduction appropriate "to trim the extra fat and account for various filing deficiencies"); *see also Coulter*, 805 F.2d at 152 ("Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge Morton did here in reducing this item by 50%"). An additional 249.2 hours is being deducted from the lodestar calculation.

### iii.    *Reduction Based on Additional Factors*

The reductions discussed thus far result in a lodestar calculation of $306,200 (765.5 hours x $400). Defendants encourage the Court to further reduce Plaintiff's fee award to bring it more in line with the $300,000 settlement. As the Sixth Circuit and Supreme Court have repeatedly advised, "the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436); *Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003) (citing *Farrar*, 506 U.S. at 114).

On May 6, 2022, which was early in the litigation or at least before Mr. Curhan billed the bulk of his time, General R.V., Mr. Baidas, Mr. Davis, and Ms. Fowler made a $200,000 Offer of Judgment. (ECF No. 71.) The Court recognizes that this offer included costs and fees. Nevertheless, given its timing, Plaintiff presumably would have retained a significant percentage of the offer. Her

23

$300,000 recovery approximately two years later was not significantly greater. *See Hines v. City of Columbus*, 676 F. App'x 546, 556 (6th Cir. 2017) (citing *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014)) ("Considering a rejected settlement offer as one way of measuring the degree of success."). Plaintiff's recovery also was slight compared to her counsel's more than $1 million valuation of the case at the start of the final pretrial conference where the settlement was reached. Counsel's initial fee request of almost $1.5 million is five times more than Plaintiff's $300,000 recovery and, on that basis alone, is excessive.

Moreover, most of Plaintiff's claims were dismissed on summary judgment, as was one defendant. *See Hines*, 676 F. App'x at 556 (citing *Hensley*, 461 U.S. at 436) (explaining that "when a plaintiff achieves limited success, a fee award based on the lodestar may be excessive, even if the claims are interrelated and nonfrivolous"). Counsel's invoicing makes it difficult, if not impossible, to divide the hours billed on a claim-by-claim or defendant-by-defendant basis.

The Court finds a 10% reduction appropriate to account for the degree of Plaintiff's success. Therefore, the Court holds that Plaintiff is entitled to a fee award of $275,580.00.

### C.    Interest

Plaintiff seeks prejudgment interest on any fee award, relying on Michigan and federal law.  (*See* ECF No. 183-1 at PageID. 9136-37.)  In a federal diversity case, state law governs whether prejudgment interest should be awarded.  *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 633 (6th Cir. 2000).  However, "in an action based on federal question jurisdiction, the award of prejudgment interest is committed to the sound discretion of the trial court."  *McPherson v. Suburban Ann Arbor, LLC*, 719 F. Supp. 3d 759, 766 (E.D. Mich. Feb. 28, 2024) (quoting *Young v. Langley*, No. 87-1446, 1988 WL 12805, at *1 (6th Cir. Feb. 19, 1988)); *see also Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford v. Uniroyal*, 154 F.3d 613, 616 (6th Cir. 1998)) ("[W]e have 'long recognized that the district court may award prejudgment interest at its discretion in accordance with general equitable principles.'").

This action is based on federal question jurisdiction.  The Court has exercised supplemental jurisdiction over Plaintiff's state-law claims.  Thus, while Michigan law may mandate prejudgment interest on an attorney fee award, *see* Mich. Comp. Laws § 600.6013, the Court concludes that the decision of whether to award such interest here is within its discretion.

The Supreme Court has "repeatedly stated that prejudgment interest 'is an element of [the plaintiff's] complete compensation.'"  *Osterneck v. Ernst &*

*Whinney*, 489 U.S. 169, 175 (1989) (brackets in original) (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1985)); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 494-95 (6th Cir. 2013) (citing *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994)).   In the context of a Title VII action, the Sixth Circuit has stated that an award of prejudgment interest is appropriate if it "helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred." *Wilson Metal Casket Co.*, 24 F.3d at 842 (citing *West Virginia*, 479 U.S. at 310).   The court has advised that "victims of discrimination should not be penalized for delays in the judicial process, and discriminating employers should not benefit from such delays." *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (citations omitted).   "The purpose of awarding prejudgment interest under Title VII . . . is to compensate victims both for the time value of the lost money as well as for the effects of inflation." *Id.* (citation omitted).   It should not be awarded if it will result in a windfall to the plaintiff. *In re ClassicStar Mare Lease Litig.*, 727 F.3d at 495 (citation omitted) ("Because prejudgment interest is compensatory in nature, it should not be awarded if it would result in the overcompensation of the plaintiff.").

Before a trial court awards a prevailing party his or her attorney's fees, the party has no right to the recovery of those fees.   Thus, until the award, there is no money lost to the prevailing party to which he or she is entitled.   Moreover, in a

26

contingency fee case, the plaintiff has not expended any funds toward his or her attorney's fees or costs during the pendency of the litigation.  A prevailing party is not entitled to interest under those circumstances, *see Green v. Nevers*, 196 F.3d 627, 633 (6th Cir. 1999), and such an award would result in a windfall.

The Court is denying Plaintiff's request for prejudgment interest on the fee award.

## III.   Costs

Plaintiff seeks an award which reimburses her for $65,410 in costs, plus interest.  Counsel's invoice for these costs is attached to Plaintiff's motion.  (*See* ECF No. 183-4.)  Defendants argue that the requested award is not reasonable, as it includes costs incurred prior to the litigation or connected only to Mr. Miller, as well as unnecessary travel costs and expert fees.

### A.   Legal Standard

The Sixth Circuit has advised that "[t]he award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary . . .." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (quotation marks and citation omitted).  District courts are permitted "to award those incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Id.* (cleaned up). "Recoverable out-of-pocket expenses are those incurred by the attorney which are

27

normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs."  *Id*. (cleaned up).

**B.  Analysis**

While Mr. Curhan deducted some expenses associated with Mr. Miller,[9] Defendants argue that all such costs were not removed from the submitted invoice. Remaining on the invoice are the costs for service on Mr. Miller ($384) and transcripts from the criminal proceedings ($246.75).  (*See* ECF No. 183-4 at PageID. 9250.)  The first expense is not reasonably charged to Defendants, but the second is.  According to Mr. Curhan, the transcripts are sworn testimony of witnesses in this action.  (*See* ECF No. 187-1 at PageID 9457 ¶ 14.)

Plaintiff seeks reimbursement for the cost of counsel's flight to Florida ($247.20) to depose a witness there.  Because the witness lives in Michigan part of the year, Defendants maintain that the out-of-town deposition was unnecessary and the related cost unreasonable.  Defendants further point out that the deposition could have been conducted virtually, as is common since the COVID-19 pandemic. Nevertheless, there is no indication that Defendants objected to this out-of-state in person deposition or that they requested that it be conducted remotely when it was

---

[9] Those costs are highlighted in yellow on the invoice.  (*See* ECF No. 183-4; ECF No. 183-7 at PageID. 9269 n.2.)

28

noticed by Plaintiff's counsel. They cannot now complain that the cost was unreasonable.

Defendants object to costs incurred before this lawsuit was filed, which are listed on the first page of the cost invoice. (*See* ECF No. 183-4 at PageID. 9249.) They include:

| 5/14/2020 | Dart Group Incorporated Service on Defendant | $128.00 |
|---|---|---|
| 8/12/2020 | Court Filing Fees | $ 20.60 |
| 11/12/2020 | EEOC-FOIA Request | $ 51.00 |
| 12/14/2020 | Ariel Larm Deposition Fees | $ 10.00 |
| | Ariel Larm Subpoena | $ 6.90 |

(*Id.*) The first two are not reasonably incurred here, as they were for service and filing fees in another action. Materials from the EEOC proceedings were material to this action, however. On the other hand, the docket does not suggest that Ariel Larm's testimony was useful to the litigation of Plaintiff's claims against Defendants, as opposed to other defendants. The Court therefore subtracts $165.50 from the requested costs.

Defendants also assert that the fees of $47,395 associated with Plaintiff's expert, Julie Moore, from the Employment Practices Group, are unreasonable.[10] (*See id*. at PageID. 9249-53.) Expert fees are recoverable under Title VII and

---

[10] Plaintiff asserts in reply that the total is $44,695. (ECF No. 187 at PageID. 9452.) She appears to be missing the $2,700 on April 13, 2024, described as "Employment Practices Group."

ELCRA; however, like all fees, they must be reasonable. *See EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 594 (6th Cir. 2013) (citing 42 U.S.C. § 2000e-5(k)); *Collister v. Sunshine Food Stores, Inc.*, 419 N.W.2d 781, 782 (Mich. Ct. App. 1988); *see also* Mich. Comp. Laws § 37.2802 (authorizing an award of "reasonable . . . witness fees"). Further, the party seeking expert fees must adequately document the expert fees incurred and the work done. *See Peoplemark*, 732 F.3d at 595; *see also Howe v. City of Akron*, 705 F. App'x 376, 383-84 (6th Cir. 2017) (same).

This Court has nothing before it to evaluate the reasonableness of this expert's fees. Counsel's invoice only references amounts and "Employment Practices Group" or "Employment Practices Group/Julie Moore" and sometimes "Expert Invoice" or "Expert Fee." (*See* ECF No. 183-4 at PageID. 9249-53.) A few entries include an invoice date. (*See id.*) There is no documentation, much less a description, of the work performed or the hours expended. Courts have found a reduction appropriate where the movant's documentation is inadequate to analyze the reasonableness of an expert's fees. *See, e.g., Howe v. City of Akron*, No. 2016 WL 916701, at *22-24 (N.D. Ohio Mar. 10, 2016) (reducing costs of one expert by 50% and awarding no costs to two others), *aff'd* 705 F. App'x 376 (6th Cir. 2017); *Libertarian Party of Ohio v. Brunner*, No. 2:04-cv-08, 2007 WL 4171630, at *4 (S.D. Ohio Nov. 20, 2007) (striking the entire requested expert fee

due to "total absence of support for the amount and no separation of the fee for time and services versus the ordinary witness costs"); *see also Knox v. PPG Industries, Inc.*, No. 2:15-cv-01434, 2019 WL 13178867, at 4-5 (W.D. Penn. June 4, 2019) (reducing request for expert fees by 50% for lack of documentation).

Plaintiff bears the burden of demonstrating the reasonableness of her expert's fee. *See Peoplemark*, 732 F.3d at 594. Without adequate documentation, there is no basis for the Court to decide whether any of these costs were reasonably expended or necessary to the litigation. Nor is there a basis for the Court to assess whether a limited reduction is appropriate and, if so, what percentage is warranted. Notably, Plaintiff did not offer Ms. Moore's expert opinions in response to Defendants' summary judgment motion or any other dispositive motion. Her name appears on the docket only in connection with Defendants' motion to preclude her from testifying.

For the above reasons, the Court concludes that Plaintiff is entitled to an award reimbursing her for costs of $17,465.50.

## IV. Conclusion

In summary, the Court is granting in part and denying in part Plaintiff's motion for an award of attorney's fees and costs. Plaintiff is entitled to the following reimbursements from Defendants General R.V. Center, Inc., Loren Baidas, and Joy Fowler:

        Attorney's Fees:   $275,580.00
        Costs:           $  17,465.50

Plaintiff is not entitled to prejudgment interest on her attorney's fee award.

However, she is entitled to prejudgment interest on the costs awarded.

Within fourteen (14) days of this Opinion and Order, Plaintiff shall provide

the Court with a proposed Judgment consistent with this decision and the terms of

the settlement agreement.[11]

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: February 19, 2025

---

[11] The proposed judgment should be filed on the docket, titled as such.  Before filing, Plaintiff's counsel shall provide defense counsel with a reasonable opportunity to object to the proposal.  The parties shall meet and confer and resolve any disputes.  If a resolution cannot be reached, Defendants may file an "objection" to the Proposed Judgment within seven (7) days of its filing.  No further filings shall be made with respect to the proposal unless requested by the Court.